IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| ROBERT CHAMBERS<br>ADC #550525 | *<br>*<br>* | |
| Plaintiff, | * | |
| v. | * | No. 4:25-cv-00303-JJV |
| | * | |
| ANTONIO JOHNSON, JR,<br>Major/Chief of Security Officer,<br>Tucker Unit, *et al.* | *<br>*<br>*<br>* | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Robert Chambers ("Plaintiff") is a prisoner in the Tucker Unit of the Arkansas Division of Correction ("ADC") who has filed this *pro se* action alleging that from November 2023 until April 2024: (1) Defendants Major Antonio Johnson, Jr., Captain Audrey Wilkins, Warden Todd Ball, and Lieutenant Natasha Odum failed to protect him from other inmates; and (2) Defendant Nurse Akesha King denied him adequate medical care after he was beaten by inmates. (Doc. 2) All other claims and Defendants have been previously dismissed without prejudice. (Doc. 16.) And the parties have consented to proceed before me. (Doc. 25.)

Defendants Johnson, Wilkins, Ball, and Odum have filed a Motion for Summary Judgment arguing they should be dismissed without prejudice because Plaintiff failed to properly exhaust his available administrative remedies against them.[1] (Docs. 18-20.) Plaintiff has filed a Response. (Docs. 23-24.) After careful consideration and for the following reasons, the Motion is

---

[1] In contrast, Defendant King does not seek summary judgment on the issue of exhaustion. (Doc. 17.)

GRANTED, and Plaintiff's claims against Defendants Johnson, Wilkins, Ball, and Odum are dismissed without prejudice.

## II.  SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.  DISCUSSION

### A.  Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily

resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. at 219; *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.* The only exception is if administrative remedies are unavailable. 42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

**B.     ADC's Grievance Procedure**

Administrative Directive 19-34 ("AD 19-34") establishes a three-step procedure for exhausting administrative remedies in any ADC Unit. (Doc. 18-2.) A summary of that procedure is included in the Inmate Handbook, a full copy is available in the prison law library, and many of the requirements are included on the forms themselves. (*Id.* at § IV(C).)

First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. (*Id.* at § IV(E)(1)). The form must include "a brief statement that is specific as to the substance of the issue or complaint

3

to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at § IV(E)(2).) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. § IV(C)(4).) And the grievance form reminds prisoners to include the "name of the personnel involved." (*Id.* at 20.)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days. (*Id.* § IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the Warden's response, or who does not timely receive a response, must appeal within five working days to the "Chief Deputy/Deputy/Assistant Director." (*Id*. § IV(F)(9).) And the response ends the grievance process. (*Id*.)

### C. Plaintiff's Grievances

The Inmate Grievance Supervisor says in her sworn declaration that from November 2023, which is when Plaintiff's failure to protect claim begins, until he filed this lawsuit on March 31, 2025, Plaintiff filed four relevant grievances: TU-24-522, TU-24-529, TU-24-532, and TU-24-535. (Doc. 18-1 at 6-7.) All four grievances were filed in August 2024, which is long after the relevant dates in this case. *(Id*.) And Plaintiff has not come forward with any additional grievances for consideration.

#### 1. TU-24-522, TU-24-532, TU-24-536

In TU-24-522, Plaintiff said in <u>July 2024</u>, Major Johnson asked him to gather information against other inmates for his personal gain and that inmates stole his property. (Doc. 18-3.) In TU-24-532, Plaintiff said in <u>August 2024</u>, Major Johnson and a non-party sergeant failed to locate

property that had been stolen by another inmate. (Doc. 18-5.) And in TU-24-536, Plaintiff said in August 2024, a non-party threw away Plaintiff's paperwork about his missing property, and Major Johnson and Warden Ball did not adequately investigate the matter. (Doc. 18-6.)

Defendants say TU-22-522 and TU-24-532 were properly rejected as being untimely filed, and that TU-24-536 is irrelevant. (Doc. 19.) However, I find all three grievances to be irrelevant because Plaintiff is not proceeding with any property claims and his failure to protect claims have been limited to those arising between November 2023 and April 2024. (Doc. 16.) Nevertheless, I appreciate Defendants filing them in the record in an abundance of caution.

2.   TU-24-529

On August 21, 2024, Plaintiff filed TU-24-529 saying that from November 2023 to March 2024, Major Johnson, Warden Ball, and "Lt. Penn" failed to protect him from other inmates in 4B and 3B barracks. (Doc. 18-4 at 3).[2] On August 27, 2024, prison officials rejected the grievance because it raised multiple issues and was filed more than fifteen days after the grieved incident, both of which are violations of AD 19-34. (*Id*. at 2, 4.) Plaintiff appealed. (*Id*.) And, on September 6, 2024, the ADC Deputy Director rejected the appeal as untimely because it was filed after the five-day deadline for doing so. (*Id*. at 5.) Plaintiff does not contest this. Instead, he says he completed all three steps of the ADC's grievance procedure, which was all that was required to do. (Docs. 23, 24.) However, to satisfy the PRLA a prisoner must properly comply with the incarcerating facility's rules and obtain a ruling on the merits, which is something he undisputedly did not do. *See Woodford*, 548 U.S. at 90 (exhaustion "means using all steps that the agency holds

---

[2] In their Brief, Defendants say this grievance did not specifically name Defendants Odum or Wilkins. (Doc. 19 at 9.) However, Defendants clarified in their Answer that Defendant "Penn-Odum," as named in the Complaint, is Defendant Natasha Odum, and Plaintiff mentioned "Lt. Penn" in this grievance. (Docs. 2, 9.)

out and doing so properly so that the agency addresses the issues on the merits"). Thus, I conclude this grievance did not properly exhaust the failure to protect claims Plaintiff is pursing in this lawsuit.

### D. Availability

Plaintiff says he attempted to file several other grievances naming Defendants Odum and Wilkins, but they as well as other officials refused to sign them. (Doc. 24 at 2.) And he claims the "Tucker Unit shows a policy and habit of refusal to sign grievances written on high ranking staff and officers." (Doc. 23 at 3.) However, Plaintiff has not provided copies of any unsigned grievances or clarified if they were about the specific failure to protect claims raised in this lawsuit. Nor has he explained why prison officials signed the previously mentioned grievances naming Warden Ball and Major Johnson but refused to do so for grievances naming Captain Wilkins or Lieutenant Odum. And, I note that contrary to Plaintiff's assertion, an ADC official did sign TU-24-529, which appears to name Defendant Odum ("Lt. Penn") as well as other Defendants. Finally and importantly, AD-19-34 § (IV)(E)(11) and (F)(9) allows prisoners to proceed to the next step of the grievance process if they do not timely receive a response from ADC officials. (Doc. 18-2 at 8, 11.) Thus, if prison officials refused to sign Plaintiff's grievances he could have proceeded to the next step without a signature and explain why he was doing so.

Plaintiff also makes the conclusory allegation, without any factual support, that he was unable to timely file grievances because he was being "held hostage" by other inmates in the barrack. (Doc. 23 at 5.) But Plaintiff does not say when he was held hostage. And he has not explained how other inmates prevented him from filing grievances during his January 2024 confinement in restrictive housing or March 2024 stay in protective custody. (Doc. 2 at 9-13). Accordingly, I find Plaintiff's assertions that administrative remedies were unavailable to exhaust

his failure to protect claims to be unpersuasive. *See Viewpoint Neutrality Now! v. Bd. of Regents of Univ. of MN.* 109 F.4th 1033, 1038 (8th Cir. 2024) (to defeat summary judgment "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor") (quoting *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)).  Because Plaintiff did not properly exhaust his available administrative remedies, Defendants Johnson, Odum, Ball, and Wilkins are entitled to dismissal  without prejudice of the failure to protect claims he has raised against them in his lawsuit. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court.  To the contrary, the exhaustion requirement plays a critical role in the remedy process.  The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 18) is GRANTED, and

7

Plaintiff's failure to protect claims against Defendants Johnson, Odum, Ball, and Wilkins are DISMISSED without prejudice.

    2.    Plaintiff may proceed with his inadequate medical care claim against Defendant King.

    3.    It is certified, pursuant to 28 U.S.C. § 1915A, that an *in forma pauperis* appeal from the Memorandum and Order would not be taken in good faith.

Dated this 30th day of October 2025.

                                                                                                    JOE J. VOLPE
                                                                                                    UNITED STATES MAGISTRATE JUDGE